**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **PHILLIP TURNER AND** | § | |
| **JAMES WHITE** | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. 9:23-CV-0065** |
| **CITY OF CORRIGAN, OFFICER** | § | |
| **ALBERT L. RICHARD, OFFICER** | § | |
| **FITZPATRICK D. FOSTER, OFFICER** | § | |
| **TRACY M. BROWN AND** | § | |
| **OFFICER JONATHAN D. REYNOLDS** | § | |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants City of Corrigan, Albert Richard, Fitzpatrick Foster, Tracy Brown, and Jonathan Reynolds, and request the Court to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and respectfully show unto the Court the following:

## I.

## STATEMENT OF THE ISSUES

Defendants City of Corrigan, Albert Richard, Fitzpatrick Foster, Tracy Brown, and Jonathan Reynolds request the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) because the complaint of Turner and White fails to statute a claim upon which relief can be granted.

## II.

## FACTS

### A. Corrigan City Ordinance 8:600.

On July 20, 2021, at a regular city council meeting, the City of Corrigan council members voted to enact City Ordinance Article 600 to Chapter 8 of the City's code of ordinances, titled "Pictures and Videoing of Police Department and Police Vehicles." The ordinance states:

"An offense occurs when posted signs are ignored or disregarded.

A. No pictures or videoing is allowed in and around Corrigan Police Department.

B. Police vehicle doors will not be opened to take any type of pictures or videoing of the inside of any police vehicle.

C. No pictures or videoing shall be allowed through any of the windows of a police vehicle anywhere at any time.

D. No pictures or videoing will be taken in front of the building area where police vehicles are parked.

E. No pictures or videoing will be taken in the lobby area of the Corrigan Police Department, 203 N. Collins St., Corrigan Texas.

F. No pictures or videoing will be taken of the dispatcher window for viewing inside the dispatcher work area.

G. Each day, or attempt in the same day, that a violation continues shall constitute a separate offense." Doc. at 15.

On July 30, 2021, the ordinance was repealed. Doc. at 32.

### B. Phillip Turner's encounter with Corrigan Police Department.

Phillip Turner drove to Corrigan, Texas on July 24, 2021, because he had heard about the City's ordinance. Doc. 1 at 27. Turner began videoing as he entered the Corrigan Police Department ("Department"). *Id*. There were no officers or police activity at the Department, so Turner decided to wait outside. *Id*.

After waiting a few minutes, Corrigan police officer Officer Brown arrived at the department. Doc. 1 at 28. Turner was still recording; Officer Brown advised Turner he was not allowed to film because it violated Corrigan's city ordinance. *Id*. Turner asked Officer Brown what would happen if the ordinance violated federal law and Officer Brown told Turner he could fight it in court. *Id*. Officer Brown again asked Turner to stop recording. Doc. 1 at 29. He also asked Turner for identification. Id. Turner had no driver's license or ID on him but provided his name. *Id*.

Corrigan police officer Officer Foster arrived at the scene and told Turner, again, that it was against City ordinance to film. Doc. 1 at 30. Officer Foster asked for Turner's date of birth and ID. *Id*. Turner asked if he was being detained and both offers said yes. *Id*.

Officer Foster took Turner's camera and stopped the recording. *Id*. Turner had another camera, which Officer Foster and Officer Brown also took. Doc. 1 at 30-31. Officer Brown ordered Turner to identify himself. Doc. 1 at 31. Officer Brown advised Turner that he was going to receive a citation and be fined. *Id*. Turner asked if he was going to be arrested if he did not identify himself; Officer Brown said yes, Turner finally complied. *Id*.

Turner was detained for approximately 20 minutes and was issued a citation for filming. *Id*.

### C. James White's encounter with Corrigan Police Department.

On July 23, 2021, James White was traveling and stopped in Corrigan, Texas, at the Corrigan Police Department ("Department"). Doc. 1 at p. 17. He observed signs that stated, "No video or pictures taken inside patrol car" and "Restricted Area: No unauthorized personnel in or around patrol cars." Doc. 1 at p. 18. Although there was no police activity occurring, White began to video the outside of the Department. *Id*. While he was videoing, Corrigan police officers Officer Richard and Officer Reynolds pulled up in a patrol vehicle. *Id*. Sometime later Officer Foster also arrived on the scene. Doc. 1 at 19.

White began to engage the officers. *Id*. At which point Officer Richard asked if White had read the signs. Doc. 1 at 19. White asked if there was a penal code regarding relating to the signs, and both offers responded that it was a city ordinance. *Id*. One of the officers then instructed White to turn around and put the camera down. White placed his camera on the hood of the patrol car. *Id*.

Officer Richard asked if White had identification on him. *Id*. White said he did not. *Id*. At this point White believed he was under arrest and attempted to invoke his Fifth Amendment right against self-incrimination. Doc. 1 at 20. Officer Richard told him, "no," indicating that White was not under arrest. *Id*.

Officer Richard insisted that White identify himself. *Id*. White refused and White offered to leave. *Id*. Officer Richard directed Officer Reynolds to conduct a weapons search of White. *Id*. The officers removed White's phone and battery charger from his front right pocket and placed the items on the patrol vehicle hood with White's camera. *Id*.

After the search, Officer Reynolds held White's hands behind his back for several minutes. Doc. 1 at 21. Officer Richard asked White for is identification again. Doc. 1 at 22. White finally

stated he would verbally identify himself. *Id*. From the pleadings it is unclear as to whether White then identified himself or not.

Officer Richard placed a called to his supervisor and provided an explanation of what occurred. Doc. 1 at 24.

White had been detained for approximately 15 minutes and told the officers he was nauseated. *Id*. The officers stated they would call an ambulance. *Id*. White stated that he did not need immediate medical treatment. *Id.*

White asked if he could remove his phone from the hood of the patrol car. Officer Foster, picked up the items and placed them on the ground at White's request. Doc. 1 at 24-25. Officer Richard issued White a citation based upon the City's ordinance and White was free to leave.

## III.

## CLAIMS

### A. Plaintiff Turner's claims

1. Officers Brown and Foster retaliated against Turner for exercising his first Amendment right. Doc. 1 at 34-35.

2. Officers Brown and Foster detained, seized, or arrested Turner without reasonable suspicion or probably cause to do so. Doc. 1 at pg. 36-37.

3. Officer Foster unlawfully seized Turner's camera. Doc. 1 at 38.

4. The City failed to train, supervise, and discipline its employees regarding the First Amendment rights of citizens to film police. Doc. 1 at 39-40.

### B. Plaintiff White's claims

1. Officers Richard, Reynolds, and Foster retaliated against Turner for exercising his first Amendment right.

2. Officers Richard, Reynolds, and Foster detained, seized, or arrested Turner without reasonable suspicion or probably cause to do so. Doc. 1 at pg. 36-37.

3. Officers Richard and Reynolds unlawfully searched White and seized his camera. Doc. 1 at 38.

4. The City failed to train, supervise, and discipline its employees regarding the First Amendment rights of citizens to film police. Doc. 1 at 39-40.

**IV.**

**ARGUMENT & AUTHORITIES**

## A. Rule 12(b)(6) Principles.

A defendant may move to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(internal quotes omitted). But the Court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard of plausibility "is not akin to a probability requirement but asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 678.

**B. Qualified Immunity.**

Plaintiffs allege that Defendants retaliated against them for exercising their rights to record the police. Doc. 1 at 34, 35. The Court should dismiss the Plaintiffs' claims of First Amendment Retaliation against the individual Defendants based on their qualified immunity.

"Qualified immunity protects public officials from liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jones v. Lamar Cty.*, 2022 WL 17175071, at \*22 (E.D. Tex. 2022), report and recommendation adopted, 2022 WL 17170943 (E.D. Tex. 2022). "To overcome the officers' qualified immunity defense, [Plaintiff] must allege facts showing that the officers (1) violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id*. When an officer invokes qualified immunity, "the burden shifts to [Plaintiff] to show the officers violated his clearly established rights." *Id*. "Regarding the first prong, a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Id*. "With respect to the second prong, a defendant is entitled to qualified immunity when his conduct is objectively reasonable in light of clearly established law at the time of the conduct at issue. Considering this principle, and to properly analyze qualified immunity here, the Court fully examines the required elements of a § 1983 claim." *Id*. The Court must "examine each officer's actions independently to determine whether he or she is entitled to qualified immunity." *Id*.

In *D.C. v. Wesby*, 138 S. Ct. 577 (2018), the Supreme Court again addressed the importance of the specificity with which clearly established law is identified:

We have stressed that the "specificity" of the rule is "especially important in the Fourth Amendment context." Probable cause "turn[s] on the assessment of probabilities in particular factual contexts" and cannot be "reduced to a neat set of legal rules." It is "incapable of precise definition or quantification into percentages." Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in "the precise situation encountered." Thus, we have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." While there does not have to be "a case directly on point," existing precedent must place the lawfulness of the particular arrest "beyond debate."

*Id*. at 590. Thus, even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th 2000); *see also Anderson v. Creighton*, 107 S. Ct. 3034, 3039-3040 (1987) ("it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable").

Plaintiffs must clear a significant hurdle to defeat qualified immunity. *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). To overcome Defendants' right to immunity, they must plead facts that establish that there is no argument that probable cause existed. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). Stated another way, actual probable cause is not necessary; merely arguable probable cause is sufficient to trigger qualified immunity. *Club Retro LLC v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009) ("[P]laintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests."); *Petersen v. Johnson*, 57 F.4th 225, 232 (5th Cir. 2023).

"When the defense of qualified immunity is raised in a motion to dismiss, the complaint is subjected to a heightened pleading requirement." *Van Dyke v. Shackleford*, 2020 WL 5580162, at *6 (E.D. Tex. 2020), report and recommendation adopted, 2020 WL 5571490 (E.D. Tex. 2020). "The complaint must state specific conduct and actions that give rise to a constitutional violation.

Conclusory allegations and assertions will not suffice. Therefore, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. As in *Van Dyke v. Shackleford*, Plaintiffs have failed to allege "any factual basis on which a jury could find that Defendant violated his constitutional rights or that any of Defendant's conduct was objectively unreasonable, and has failed to identify "a single existing precedent which demonstrates Defendant's alleged conduct constitutes a constitutional violation," so the Court should dismiss all claims against the individual Defendants based on their qualified immunity.

Further, police officers are not afforded discretion in discerning which laws are constitutional and should be enforced, and which should not. Police officers are charged to enforce laws until and unless they are declared unconstitutional. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. *Id*. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement. *Id*.

## C. Enforcement of Ordinance 8:600 and Qualified Immunity.

Here, the officers, in stopping, detaining, searching and removing the Plaintiffs' cameras, and issuing both Plaintiffs citations, were enforcing Ordinance 8:600, an ordinance passed Corrigan's city council. Doc. 1 at 14-15. Supreme Court precedent dictates that the officers enforce this ordinance, until and unless the ordinance is declared unconstitutional. While the Supreme Court states that a possible exception _may_ exist, case law has created no such exception. At the

time of the incidents made the basis of Plaintiffs' claims, Ordinance 8:600 was in effect and to date has not been found to be unconstitutional.

Accordingly, based upon Plaintiffs own pleadings, the officers involved witnessed both Plaintiffs recording around Corrigan Police Department when there was no ongoing police activity, in the front of the building where the police vehicles park, and Turner admitted to recording in the lobby area of the Police Department. All these actions were in violation of Ordinance 8:600 and were facts that gave rise to the reasonable suspicion and probably cause needed to stop, detain, search each Plaintiff, and then issue a citation. Further, the officers did not retaliate against Plaintiff for exercising his first amendment right; they were simply enforcing Ordinance 8:600, an ordinance they were charged to enforce.

### D. White pleads no facts as to Officer Foster.

Personal involvement is an essential element of a civil rights action under 42 U.S.C.§ 1983. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). A civil rights plaintiff cannot simply make generalized allegations or assert legal or constitutional conclusions to satisfy this requirement. *Murphy v. Keller*, 950 F.2d 290, 292 (5th Cir. 1992). To successfully plead a cause of action in a civil rights case, the plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Hence, to avoid dismissal, Plaintiffs' Complaint must contain particular facts indicating that each defendant was personally involved in the alleged civil rights violation. *See Pechon v. La. Dep't of Health & Hosps.*, 368 F. App'x 606, 610 (5th Cir. 2010). These facts must create an affirmative link between the claimed injury and each defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

White pleaded no facts relating to Officer Foster and his participation in any wrong doing. Accordingly, White's claims against Officer Foster should be dismissed.

### E. Plaintiffs' failure to train, supervise, or discipline fail.

Plaintiffs allege the City is liable for failing to train, supervise, and discipline its employees regarding the First Amendment rights of citizens to film police, and whether filming the police constitutes criminal activity that justifies seizure of persons and property.

A municipality is included among the persons to whom § 1983 applies. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "Notably, liability may be imposed only where [the government entity] itself causes the constitutional violation at issue." *Jones v. Lamar Cty.*, 2022 WL 17175071, at *17–18 (E.D. Tex. 2022), report and recommendation adopted, 2022 WL 17170943 (E.D. Tex. 2022). "A plaintiff suing a municipality under § 1983 must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Id*.

To hold a municipality liable on a theory of failure-to-train-or-supervise, the plaintiff must show (1) the supervise or train of the employee was inadequate, (2) a causal link exists between the failure-to-train-or-supervise and the violation of the plaintiff's rights; and (3) the failure-to-train-or-supervise amounts to deliberate indifference." *Id*. at *19; *Wooten v. Roach*, 431 F.Supp.875, 890 (E.D. Tex. 2019).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." *Id*. at 18. "When such a claim is made, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id*. "However, a plaintiff must allege with specificity how a particular training program

is defective." *Id*. This case is not the limited circumstance in which failure to train and supervise give rise to a § 1983 claim.

"To plausibly plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to [his] injury – [he] must plead the existence of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Williams v. City of Nacogdoches, Tex.*, 2022 WL 18399620, at *11 (E.D. Tex. 2022), report and recommendation adopted, 2023 WL 348336 (E.D. Tex. 2023). "A pattern or practice of unconstitutional violations is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. "[I]solated violations cannot constitute a custom and policy." *Id*. at *12. A plaintiff must plead "sufficiently numerous prior incidents to establish a pattern of unconstitutional conduct constituting customary policy." *Id*. "Thus, a pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id*. Plaintiffs' failure to allege specific instances of prior unlawful acts of retaliation, detention, search, seizure, or arrest, of other individuals under similar circumstances in their Complaint "is fatal to the possibility of inferring the existence of a customary policy allegation." *Id*. at *13.

A failure-to-discipline claim has these elements: "first, the municipality failed to discipline its employees; second, that failure to discipline amounted to deliberate indifference; and third, the failure to discipline directly caused the constitutional violations in question." *Id*. at *20. "Where there is no actionable underlying constitutional violation or no showing of deliberate indifference by way of alleging a pattern of failure-to-discipline, any failure-to-discipline claim must fail." *Id*.

Further, Plaintiffs fail to allege how the City failed to train, supervise, or discipline and how these alleged failures was the moving force giving rise to their alleged constitutional violation.

## PRAYER

WHEREFORE, premises considered, Defendants City of Corrigan, Albert Richard, Fitzpatrick Foster, Tracy Brown, and Jonathan Reynolds pray this Court grant their motion to dismiss and for such other and further relief to which the Defendants may be justly entitled.

Respectfully submitted,

LAW OFFICE OF ERIKA L. NEILL, PLLC
122 East Lufkin Avenue
Lufkin, Texas 75901-2805
Telephone: (936) 632-2259
Facsimile: (936) 632-3316

By:      /s/Erika L. Neill
          Erika L. Neill
          State Bar No. 24070037
          eneill@neill.law
          Attorney for Defendants

### Certificate of Service

A true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court, through its CM/ECF system, on the 28th day of July, 2023.

Brandon Grable
Grable Grimshaw, PLLC
1603 Babcock Road, Suite 280
San Antonio, Texas 78229

          /s/Erika L. Neill
          ERIKA L. NEILL